# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 19th day of July, two thousand ten.

PRESENT:
            José A. Cabranes,
            Robert D. Sack,
            Richard C. Wesley,
                    *Circuit Judges.*

_____

                                            08-9039-am
In re Yan Wang,

            Attorney.                       **ORDER OF
                                            GRIEVANCE PANEL**

_____

For Yan Wang:       Richard M. Maltz, Esq., New York, New York.


**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the request of Yan Wang, who is the subject of a disciplinary proceeding in this Court, for leave to withdraw from the Court's bar is granted, and this proceeding is terminated.

By order filed in April 2008, this Court referred Yan Wang to the Court's Committee on Admissions and Grievances ("the Committee") for investigation of the matters described in that order and preparation of a report on whether she should be subject to disciplinary or other corrective measures.

During the Committee's proceedings, Wang had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held on September 19, 2008. Wang was represented during the Committee's proceedings by Richard M. Maltz, Esq. Presiding over the hearing were Committee members Paul C. Curnin, Esq., Terrence M. Connors, Esq., and Eileen M. Blackwood, Esq. In July 2009, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Wang with a copy of the Committee's report, and Wang responded.

In its report, the Committee concluded that there was clear and convincing evidence that Wang had engaged in conduct warranting the imposition of discipline. *See* Report at 11-12. Specifically, the Committee found that Wang (a) had failed to comply with the Court's scheduling orders in a number of cases, resulting in their dismissal, (b) had made misrepresentations to the Court and the Committee, and (c) had practiced in this Court without first being admitted to its bar. *See id.* at 2-7, 11. After noting the presence of various aggravating and mitigating

2

factors, *id.* at 9-11, the Committee recommended that Wang be suspended from this Court's bar for a six-month period, and directed to attend certain continuing legal education ("CLE") programs and submit periodic reports, *id.* at 11-12.

In her response to the Committee's report, Wang conceded that she had improperly terminated a number of cases by allowing them to be dismissed on default, failed to adequately supervise an attorney who prepared briefs for her, and filed briefs in this Court prior to her admission to the Court's bar. *See* Response Affidavit at 2-5, and 2 n.2. However, Wang argues that she did not intentionally misstate any facts, and that many of the defaults either were consistent with her clients' goals or resulted from her clients' failure to pay fees or to keep in touch with her. *See id.*, at 3-4, 5-6. In conclusion, Wang expressed her belief that she is not well-suited for federal appellate work and asked that she be permitted to resign from the Court's bar in lieu of the six-month suspension and other measures recommended by the Committee. *See id.*, at 6-7.

I. **Conduct Post-Dating the April 2008 Referral to the Committee**

Review of this Court's docket indicates that, since the date of her referral to the Committee, Wang has defaulted in one case and had her briefing criticized in several other cases.

In *Feng Yu You v. Mukasey*, 07-5320-ag, Wang and the Government stipulated to suspension of the briefing schedule until the earlier of October 21, 2008, or the issuance of a

3

decision in two other cases. *See id.,* order filed May 19, 2008, at 2. In December 2008, this Court ordered Wang to show cause why the proceeding should not be dismissed, based on her failure to reactivate the case, and directed Wang to file either a letter confirming the withdrawal of the case, a motion to reinstate, or a new stipulation. *See id.,* order filed Dec. 9, 2008. Wang failed to respond and the case was dismissed. *See id.,* order filed Jan. 20, 2009.

In October 2008, this Court criticized Wang's briefing in *Joshico v. Mukasey*, 07-3437-ag, finding that Wang's brief made "bald assertions without any evidentiary support," and that her argument about one of her claims was "contained only in a heading." *Id.,* order filed Oct. 31, 2008, at 3. The Court therefore concluded that Wang's client had waived her claims that the BIA had abused its discretion by taking administrative notice of a country report, and that the evidence she had submitted established a pattern or practice of persecution against Christians in Indonesia. *See id.* The Court referred Wang to the Grievance Panel, finding the brief to be "seriously deficient." *Id.* at 3 n.2. However, the brief was received by the Court on May 7, 2008, and it is not clear whether Wang had, as of that date, received notice of the concerns expressed in the Court's referral order, since the Committee served the referral order on Wang under cover of a letter dated May 2, 2008. *See* Committee's

4

May 2, 2008 letter (Committee Case Materials, tab. 2). On the other hand, in her June 2008 response to the Committee's May 2, 2008 letter, Wang failed to list *Joshico* as one of her pending cases, although it remained pending until October 2008. *See* Wang's June 27, 2008 letter (in vol. I of Wang's submission), at 7.

In two other cases, where the briefs were filed after Wang was on notice of the referral order, this Court found that Wang had waived dispositive issues by failing to raise them in her briefs. In *Yan Zhen Ya v. Holder*, 08-4368-ag, an appeal from a denial of asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), the Court found that it "need not review the merits of the agency's denial of [Ya's] applications for asylum and withholding of removal because ... Ya has abandoned any challenge to the agency's dispositive nexus finding," and that Ya had abandoned any challenge to the denial of CAT relief because her brief mentioned the CAT claim in only a "single conclusory sentence." *Id.*, order filed Sept. 16, 2009, at 2-3. In *Xiu Ming Wu v. Holder*, 08-1802-ag, the Court found that, although Wang had argued that "the BIA [had] erred in affirming the IJ's finding that [the petitioner's] claim did not fall within one of the protected grounds [enumerated in 8 U.S.C. § 1158(b)(1)(B)(i)], she fail[ed] to articulate in her brief under which protected ground her claim falls and why." *Id.*,

5

order filed Mar. 13, 2009, at 3-4.[1]

## II. Request to Withdraw from This Court's Bar

An attorney who is the subject of a disciplinary proceeding in this Court may resign from the Court's bar upon obtaining leave of the Court. *In re Saghir*, 595 F.3d 472, 473-74 (2d Cir. 2010). Although leave to resign during the pendency of disciplinary proceedings was denied in both *Saghir* and *In re Jaffe*, 585 F.3d 118 (2d Cir. 2009), we find the present case significantly different.

In both *Saghir* and *Jaffe*, resignation from the Court's bar would have been a means of avoiding involuntary disbarment, while, in the present case, the Committee has only recommended that Wang be suspended for six months and subject to certain CLE and reporting requirements. Thus, Wang proposes a remedial measure arguably more onerous than she likely faced if these proceedings continued, which was not the case in *Saghir* or *Jaffe*. Furthermore, the misconduct at issue in *Saghir* and *Jaffe* was far more serious than that at issue in the present case, and Wang has

---

[1] Although Wang's brief was criticized in *Bing Li v. Mukasey*, 07-5466-ag, that brief was filed in February 2008, prior to receiving notice of this Court's referral order. *See id.*, brief filed Feb. 19, 2008. In that case, the Court declined to reach the merits of the agency's adverse credibility determination because the petitioner had "failed to challenge that determination sufficiently in his brief to this Court." *Id.*, order filed June 20, 2008, at 2-3. The Court noted that the petitioner's brief had addressed only one of the three findings supporting the adverse credibility determination, and denied the petition on the basis of the unchallenged findings. *See id.*

conceded culpability to a far greater degree than Saghir or Jaffe. Finally, misunderstandings about the nature of Wang's withdrawal from this Court's bar are unlikely since the present order will be made public. In light of the preceding factors, the factual findings presented in the Committee's report, and the conduct described in section I of this decision, we conclude that Wang's resignation is in the interests of justice. We therefore grant Wang leave to resign.

## III. Filing of Briefs Prior to Admission to the Court's Bar

In light of our acceptance of Wang's resignation, there is no need to reach conclusions as to most of the conduct discussed in the Committee's report. However, since other disciplinary authorities will likely make use of the Committee's report, we note the following about the Committee's finding that Wang had violated Rule 46 of the Federal Rules of Appellate Procedure and Local Rule 46 by practicing before this Court prior to her admission to the Court's bar. *See* Report at 11.

Prior to January 1, 2010, this Court's rule concerning admission to the Court's bar stated the following:

> Counsel of record for all parties must be admitted to practice before this court. Oral argument may be presented only by attorneys admitted to practice before this court.

Former Second Cir. Local Rule 46(d). We are informed that, during the relevant time period, some employees of this Court had interpreted this rule as meaning that an attorney litigating

7

before this Court need not be admitted to the bar of this Court unless he or she intended to orally argue the case. We also are informed that attorneys inquiring about the Court's admission requirements were so advised. For purposes of this proceeding, we need not decide whether we agree with that interpretation of the rule. However, we find that a reasonable attorney could have accepted, and acted upon, a Court employee's explicit instruction that admission need not be sought for purposes of filing documents with the Court.

The record before this Court does not make clear whether Wang received, directly or indirectly, advice from a Court employee on the need for admission. However, her belief as to the need for admission was consistent with the advice that other attorneys had received. Under these circumstances, we could not, without further investigation, reach a conclusion on the issue of whether Wang had engaged in misconduct by failing to be admitted prior to practicing in this Court.[2]

---

[2] The current version of the relevant rule requires that an attorney filing a petition, motion, brief, or other document in this Court on behalf of a party be a member of the Court's bar, have an admission application pending, or be admitted as an eligible law student or *pro hac vice*. *See* Second Cir. Local Rule 46.1(a)("Except as otherwise provided in these rules, an attorney who appears on behalf of a party or an amicus curiae in any capacity must be admitted to practice before this court, or have pending an application for admission, and must file a Notice of Appearance in accordance with [Local Rule] 12.3.").

**IV. Conclusions**

Upon due consideration of the Committee's report, the underlying record, Wang's submissions, and the additional appellate proceedings described above, it is hereby ORDERED that Wang's request for leave to resign from the bar of this Court is GRANTED, and this proceeding is terminated. If Wang seeks readmission to this Court's bar in the future, she must do so by motion addressed to this panel, under this docket number.

We do not require Wang to withdraw from any pending case in this Court in which briefing has been completed. However, Wang must seek to withdraw if so instructed by a client, and any panel of this Court deciding a pending case may revisit the issue of Wang's continued representation upon consideration of the specific circumstances.

The text of this panel's April 2008 order and the Committee's report are appended to, and deemed part of, the present order for the following disclosure purposes. Wang must disclose this order to all clients in cases currently pending in this Court and to all courts and bars of which she is currently a member, and as required by any bar or court rule or order. Wang also must, within fourteen days of the filing of this order, file an affidavit with this Court confirming that she has complied with the preceding disclosure requirement. Furthermore, the Clerk of Court is directed to release this order to the public by

posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Wang, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:  Michael Zachary
     Counsel to the Grievance Panel

## APPENDIX 1

### Text of April 2008 order

For the reasons that follow, Yan Wang, is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether she should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46(h). We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

Since 2003, this Court has dismissed 37 of the 62 petitions for review for which Wang was the petitioners' counsel of record, based on the petitioners' failure to comply with this Court's scheduling orders. *See* Second Circuit cases docketed under 04-0486; 04-1308; 04-3214; 04-3217; 04-3274; 04-3665; 04-3727; 04-3728; 04-3829; 04-4200; 04-4272; 04-4466; 04-5006; 04-5253; 04-5255; 04-6105; 04-6290; 05-0083; 05-2120; 05-2156; 05-2315; 05-2322; 05-2612; 05-3031; 05-3744; 05-4395; 05-4396; 05-4482; 05-5911; 05-6826; 06-1633; 06-1638; 06-1911; 06-2954; 06-2964; 06-3872; 06-4802. Further, this Court has dismissed an additional petition for review for which Wang was counsel of record, based on the petitioner's failure to file form C/A pursuant to this Court's Civil Appeals Management Plan. *See Wang v. Gonzales*, 05-5346-ag. In

10

several of the above-noted cases, Wang filed motions for reinstatement in which she acknowledged that, after accepting a retainer, she failed to file a timely brief because the petitioner did not make subsequent payments. *See Yang v. Gonzales*, 06-1638-ag, motion filed Apr. 27, 2007 (Wang Aff. ¶ 5) ("[T]he petitioner delayed his payment, which usually acted as a reminder for us to finish the brief. Thus, we suspended the petitioner's brief with the petitioner's awareness."); *Zheng v. Ashcroft*, 04-5006-ag, motion filed May 29, 2007 (Wang Aff. ¶ 5) (same); *Chen v. Ashcroft*, 05-2322-ag, motion filed June 6, 2007 (Wang Aff. ¶ 5) (same); *Meng v. Ashcroft*, 05-2315-ag, motion filed June 6, 2007 (Wang Aff. ¶ 5) ("[H]e was not able to pay for the brief . . . . Thus, the petitioner did not proceed with the brief."). However, this Court's records for the cited cases do not indicate that, prior to the respective deadlines for filing of the briefs or form C/A, Wang requested an extension of time to comply, leave to withdraw as counsel, a stay of proceedings, or withdrawal of the appeal.

Further, we note that the facts alleged by Wang in at least three of her affidavits filed in support of motions to reinstate have been strikingly similar. *See He v. Gonzales*, 05-3744-ag, motion filed June 6, 2007 (Wang Aff. ¶ 7) (stating that petitioner's foot had been seriously injured while working in a restaurant and, due to the cost of medical treatment, petitioner was not able to pay for her brief); *Liu v. Ashcroft*, 04-1308-ag, motion filed June 15, 2007 (Wang Aff. ¶ 7) (stating that petitioner's arm had been seriously burned while working in a restaurant and, due to the cost of medical treatment, petitioner was not able to pay for her brief); *Huang v. Ashcroft*, 05-0083-ag, motion filed June 15, 2007 (Wang Aff. ¶ 7) (stating that petitioner's hand and arm were seriously burned while working in a restaurant and, due to the cost of medical treatment, petitioner was not financially able to proceed with his case).

Finally, in *Yi Mei Fang v. Mukasey*, 07-0877-ag, this Court ordered Wang to show cause why she should not be sanctioned for her failure to observe the requirements of Federal Rule of Appellate Procedure 28, based on a number of deficiencies in her brief. *See Yi Mei Fang*, 07-0877-ag, order entered Nov. 29, 2007. In her response, Wang alleged, *inter alia*, that another attorney had drafted the brief, and that a "computer bug" may have caused irrelevant matters to be inserted into the brief. *Id.*, response filed Dec. 7, 2007. However, Wang also stated that she had read the entire brief and did not observe the errors. *Id.* Upon review of Wang's response, the panel presiding over the case transferred Wang to this panel. *Id.*, order filed Jan. 4, 2008.

Upon due consideration of the matters described above, it is ORDERED that Yan Wang is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances.

```
                                FOR THE COURT:
                                Catherine O'Hagan Wolfe, Clerk

                                By:_____/s/_____
                                      Michael Zachary
                                      Supervisory Staff Attorney
                                      Counsel to the Grievance Panel
```

11

## July 2009 Report of the Committee
## on Admissions and Grievances

## REPORT & RECOMMENDATION
### In Re: Yan Wang, #07-9039-am

## I. Introduction

By order dated April 2, 2008, the United States Court of Appeals for the Second Circuit (the "Court") referred Yan Wang to this Committee for investigation of her conduct before the Court and for preparation of a report on whether she should be subject to discipline or other corrective measures.

Ms. Wang is an immigration attorney admitted to practice before the Court on August 30, 2007. The Court's Referral Order raises a number of areas of concern regarding Ms. Wang's conduct, including (1) thirty-seven instances of failure to comply with the Court's scheduling orders, resulting in dismissal of her clients' petitions for review; and (2) the veracity of Ms. Wang's representations to the Court. Additionally, this Committee learned that although Ms. Wang was admitted to the Court on August 30, 2007, she had been representing petitioners before the Court without seeking pro hac vice admission since at least 2004.

The following constitutes the Committee's Report and Recommendation to impose discipline on Ms. Wang.

## II. The Referral Order and this Disciplinary Proceeding

On May 2, 2008, this Committee issued an Order to Show Cause regarding Ms. Wang's conduct as alleged in the Court's Referral Order. The Referral Order addresses thirty-nine separate matters pending before the Court in 2004-2007 in which Ms. Wang was listed as counsel of record. By letter of May 23, 2008, Ms. Wang timely requested a thirty day extension of her time to respond, which was granted by this Committee. On June 27, 2008, Ms. Wang timely submitted a response with exhibits. Thereafter, Ms. Wang retained counsel, Richard M.

1

Maltz, Esq., who supplemented Ms. Wang's response with further documentation. A hearing was held on September 19, 2008, before a subcommittee consisting of Eileen Blackwood, Terrence M. Connors, and Paul Curnin. Ms. Wang appeared with attorney Maltz who presented Ms. Wang as the only witness. On September 23, 2008, Mr. Maltz wrote to this Committee advising of the a prior Letter of Admonition by the Executive Office for Immigration Review, which Ms. Wang had not disclosed during the hearing.

## III. Factual Background

The following facts are taken from Court records, Ms. Wang's written submissions with documentation, and the testimony presented at the hearing.

Ms. Wang practices in the New York City area with the Law Offices of Matthew J. Jeon, P.C. She has been admitted to practice law by the Third Department since 2002. She is thirty-six years old and was born in Beijing, China. She has lived in the United States since 1999.

Ms. Wang graduated from Lanzhou University School of Law in 1996 where she states that she was the top student in her class all four years. She holds a Master's Degree in Economic Law from Capital Economics and Trade University (1999), and an L.L.M. from Temple Law School (2000).

Ms. Wang has worked for the Law Offices of Mathew Jeon, P.C., for seven years. The practice has two offices, one in New Jersey and one in Manhattan; she works in the Manhattan office which mainly serves Chinese, specifically Fujianese, clients. Her immigration work is mainly comprised of asylum applications and family-based petitions.

According to Ms. Wang's testimony, before 2003, Ms. Wang had few Second Circuit files. Because of a change in immigration enforcement practices, however, in 2004 and 2005, Ms. Wang's office received an influx of clients who required intervention before the Second Circuit. In approximately 2007, she began to limit the number of Second Circuit cases her office accepts, and as of the date of the hearing, had seven cases pending before the Court.

## IV. The Alleged Misconduct

### A. Dismissal of Petitions for Failure to Comply with the Court's Rules

The brunt of the allegations against Ms. Wang stem from the Court's dismissal of thirty-seven of the sixty-two petitions for review that she filed with the Court. The petitions were dismissed for failure to comply with the Court's scheduling orders.

At her hearing, Ms. Wang provided three basic explanations for these dismissals: (1) her clients failed to keep in touch with her office, and her office's attempts to reach them failed; (2) her clients failed to pay; and (3) she and/or the clients decided that certain matters should not be pursued. Ms. Wang testified that at the time, she did not know that she should file a motion to

2

withdraw if she did not intend to pursue a matter before the Court. She now understands the requirement that she do so.

Ms. Wang did not offer specific responses to the dismissals at her hearing but rather chose to address the issue more generally, as described above. This Committee finds that her testimony and the documents presented at the hearing do not provide adequate explanations for her conduct. Her written responses to this Committee regarding this matter are likewise inadequate; those responses are summarized as follows:

(1) In response to the dismissals of Liu v. Ashcroft, 04-1308-ag, Wang v. Ashcroft, 04-6290-ag, Tang v. Gonzales, 05-6826-ag, Gao v. Gonzales, 06-1633-ag and Yang v. Gonzales, 06-3872-ag, Ms. Wang admits that each case was dismissed for failure to file a brief but gives no specific reason for the failure. In each of these cases, she thereafter filed a motion to reinstate, which was granted.

(2) In response to the dismissals of Zheng (Wen Jin) v. Ashcroft, 04-5006-ag, Huang v. Ashcroft,05-0083-ag, Meng v. Ashcroft, 05-2315-ag, Chen v. Ashcroft, 05-2322-ag, He v. Gonzales, 05-3744-ag, Lin v. Gonzales, 05-5911-ag, Yang v. Gonzales, 06-1638-ag, and Song v. Gonzales, 06-4802-ag, Ms. Wang admits that each case was dismissed for failure to file a brief but again gives no specific reason for the failure. In each of these cases, she thereafter filed a motion to reinstate, which was denied. Nevertheless, at her hearing, Ms. Wang did not acknowledge that any client was harmed by any dismissal, including these eight petitioners for whom reinstatement was denied.

(3) In response to the dismissals of Zeng v. Ashcroft, 04-3214-ag, Chen v. Ashcroft, 04-3217-ag, Wang v. Ashcroft, 04-3829-ag, Liu-Ziu v. Ashcroft, 04-5253-ag, Lin v. Gonzales, 05-3031-ag, and Guo v. Gonzales, 06-1911-ag, Ms. Wang does not deny that the petitions were dismissed for failure to follow the Court's scheduling orders. She claims that the clients failed to keep in touch with her office and that her office's attempts to reach them failed.

(4) In response to the dismissals of Karangkong v. Ashcroft, 04-3727-ag, Dandi v. Ashcroft, 05-2120-ag, Chung v. Ashcroft, 05-2156-ag, Goutama v. Gonzales, 05-4482-ag, and Lomban v. Gonzales, 06-2964-ag, Ms. Wang does not deny that the petitions were dismissed for failure to follow the Court's scheduling orders. As her explanation, she claims that the clients paid one or two of ten $250 or $300 monthly installments, but then stopped paying.

This Court has specifically rejected such explanations. In Bennett v. Mukasey, 525 F.3d 222 (2d Cir. 2008), on motion to reinstate a petition for review of a BIA decision, Judge Jon O. Newman held that "a lawyer's practice of accepting an initial retainer fee and then deliberately failing to take required action because of non-payment of additional fees, thereby permitting his client's petition to be dismissed, is unacceptable." Id., 525 F.3d at 223.

3

(5) In <u>Chen v. Gonzales</u>, 06-2954-ag, Ms. Wang claims that she filed a brief on December 15, 2006, but that it was returned because no scheduling order had been issued for briefs. She admits that the case was then dismissed for failure to file a brief. She filed a motion to reinstate the petition, which was granted.

(6) In <u>Liu v. Ashcroft</u>, 04-3274-ag, Ms. Wang does not deny that the petition was dismissed for failure to follow the Court's scheduling order. She claims that the client's wife applied for political asylum, that the client abandoned his petition for review in order to focus on her application, and that both her client and her client's wife were thereafter granted asylum.

(7) In <u>Chen v. Ashcroft</u>, 04-3728-ag, Ms. Wang does not deny that the petition was dismissed for failure to follow the Court's scheduling order. She claims that she and the government stipulated to dismiss the petition, but the docket does not reflect the entry of any such stipulation.

(8) In <u>Burhan v. Gonzales</u>, 05-4395-ag and <u>Mamahit v. Gonzales</u>, 05-4396-ag, Ms. Wang does not deny that the petition was dismissed for failure to follow the Court's scheduling order. She claims that the cases, for a husband and wife, were transferred to the Third Circuit. They were first dismissed by the Second Circuit, however, and were subsequently dismissed by the Third Circuit for failure to prosecute.

(9) In <u>Li v. Ashcroft</u>, 04-0486-ag, Ms. Wang admits that her office did not file a brief and that the case was dismissed for failure to prosecute. She claims that the matter was instead pursued before the Board of Immigration Appeals ("BIA"). While Ms. Wang testified that she generally would consult with clients about whether to pursue a matter in the Second Circuit or move to reopen with the BIA, she offered no proof that she consulted with the client regarding the decision in this case.

(10) In <u>Lin v. Ashcroft</u>, 04-3665-ag, <u>Wang v. Ashcroft</u>, 04-4466-ag, and <u>Jiang v. Ashcroft</u>, 04-5255-ag, Ms. Wang does not deny that the petitions were dismissed for failure to follow the Court's scheduling orders. She claims that the matters were pursued before the BIA instead. As in <u>Li v. Ashcroft</u>, 04-0486-ag, Ms. Wang offered no specific proof that she consulted with her clients in these matters in making the decision to pursue the matter before the BIA instead of the Court.

(11) In <u>Zheng v. Ashcroft</u>, 04-4200-ag, Ms. Wang does not deny that the petition was dismissed for failure to follow the Court's scheduling order. She claims that after she filed an appeal with the Second Circuit, the client advised that she would like to reopen her case with the BIA.

4

(12) In Zheng v. Ashcroft, 04-4272-ag, Ms. Wang does not deny that the petition was dismissed for failure to follow the Court's scheduling order. She claims that the matter was pursued before the BIA instead and that her client is currently married to a Permanent Resident who intends to apply for her husband when she becomes a citizen. As with the matters discussed above, Ms. Wang offered no proof that she discussed not pursuing the Second Circuit matter with her client before it was dismissed.

(13) In Lian v. Ashcroft, 04-6105-ag, Ms. Wang does not deny that the petition was dismissed for failure to follow the Court's scheduling order. She claims that her office did not file a brief because they concluded that Respondent had a better chance of relief before the BIA. Ms. Wang provided no proof that this decision was discussed with the client. Ms. Wang claims that the BIA denied relief and the client decided not to pursue an appeal in the Second Circuit.

(14) In Zheng v. Gonzales, 05-2612-ag, Ms. Wang admits that the petition was dismissed for failure to prosecute. She claims that her office instead filed a Motion to Reopen to the BIA on April 20, 2007 and again on July 21, 2007. These motions were made over a year after the Second Circuit's dismissal on February 8, 2006.

(15) In Wang v. Gonzales, 05-5346-ag, the Court dismissed the petition for review because the petitioner failed to file form C/A pursuant to this Court's Civil Appeals Management Plan. Ms. Wang provided no response to this allegation.

Ms. Wang acknowledges that she had insufficient knowledge and insufficient systems in place for Second Circuit practice.[1] She claims that in response to the Court's inquiry into these dismissals, she has undertaken corrective measures. She is using new computer software to track deadlines. She has improved the letter used for contacting clients and gathers more information from clients so that they can stay in better communication. She has taken continuing legal education courses on immigration practice and courses on federal appellate practice. She reads submissions that were drafted by others more closely. She has decreased the number of cases that she takes that will require petitions to this Court.

As noted above, Ms. Wang did not acknowledge that any client was harmed by any of the thirty-seven dismissals, even though her motions to reinstate eight of the dismissals were denied.

---

[1] Additionally, this Committee is compelled to note that, among other admissions, Ms. Wang admitted that she did not request oral argument on her cases in part because: "I am not a good litigator, so that is my weakness." Transcript 38-39. She went on to explain that, "I would rather to avoid not being laughed by the Court or the officials or the staff because I know I have a lot to learn. . . . I don't think I have that kind of ability." Id. Ms. Wang did state, however, that if a case needed to be argued, she would prepare it to be argued for the Second Circuit and ask the "of counsel" and/or other counsel doing litigation work for assistance. Also, the vast majority of her Second Circuit cases are presented on submission because of the Court's Non-Argument Calendar and often for strategic reasons. Therefore, this Committee is satisfied that despite Ms. Wang's lack of confidence in her oral advocacy skills, her clients' interests will be protected.

5

Further, Ms. Wang testified that she would not voluntarily advise clients that they could consult another attorney. She did express remorse and apologized to the Court for her conduct.

## B.    Veracity of Representations to the Court

The Referral Order also requested a response regarding separate submissions by Ms. Wang in separate matters that contained similar or identical facts. First, in He v. Gonzales, 05-3744-ag, Liu v. Ashcroft, 04-1308-ag, and Huang v. Ashcroft, 05-0083-ag, Ms. Wang filed affidavits in support of motions to reinstate petitions which alleged suspiciously similar facts. In He v. Gonzales, 05-3744-ag, Ms. Wang stated that petitioner was not able to pay for her brief because petitioner's foot had been seriously injured while working in a restaurant. In Liu v. Ashcroft, 04-1308-ag, Ms. Wang stated that petitioner was not able to pay for her brief because petitioner's arm had been seriously burned while working in a restaurant. In Huang v. Ashcroft, 05-0083-ag, Ms. Wang stated that petitioner was not able to pay for his brief because petitioner's hand and arm had been seriously burned while working in a restaurant.

Ms. Wang testified that many of her clients work in small restaurants under poor conditions and do indeed frequently get injured in these ways. For purposes of this report, this Committee accepts Ms. Wang's explanation. This Committee is troubled, however, by the fact that Ms. Wang did not have any personal knowledge or check any of the facts included in her affidavits before swearing to them.

Second, in Yi Mei Fang v. Mukasey, 07-0877-ag, Ms. Wang filed a brief that failed to meet the requirements of Federal Rule of Appellate Procedure 28. The Court ordered Ms. Wang to show cause why she should not be sanctioned for her failure to observe the requirements. In her response to the Court, Ms. Wang stated that another attorney had drafted the brief. She acknowledged that she had read it and had not seen the errors. She stated that a "computer bug" may have caused irrelevant matters to be inserted into the brief.

In this proceeding, Ms. Wang further claims that the attorney who was responsible for writing the Fang brief was also responsible for a brief in another matter, Zheng v. Gonzales, 06-5404-ag, which Ms. Wang claims was due at the same time. In her written response, she claims that the errors were due to "templates" being "mixed up" between the two briefs. At the hearing, Ms. Wang claimed that there was a "cut and paste" problem. Essentially, she claims that an "of counsel" attorney wrote the briefs and improperly pasted the facts from one matter (Zheng) into the papers for another matter (Fang).

Ms. Wang accepts responsibility for the briefs, both of which were in her name. She claims that she did not read them closely enough and now takes more time to review briefs before their submission. Specifically, Ms. Wang claims that her former practice was to read draft briefs on the computer screen without printing them out, a practice which she claimed inhibited her ability to carefully review the briefs. Ms. Wang testified that she now prints the drafts and reads them on paper. She claims that this practice assists her in a more careful review. However true this may be, this Committee finds this excuse to be unavailing.

6

What is more, a review of the docket for <u>Zheng v. Gonzales</u>, 06-5404-ag, and <u>Yi Mei Fang v. Mukasey</u>, 07-0877-ag, reveals multiple discrepancies in Ms. Wang's explanation. First, the briefs were not actually due at the same time. In <u>Fang</u>, the brief was due May 14, 2007. In <u>Zheng</u>, however, Ms. Wang requested two extensions to file the brief, which were granted, ultimately resulting in the brief being due on February 20, 2007, nearly three months before <u>Fang</u> was due. Despite the two extensions, Ms. Wang missed the February 20, 2007 deadline, filed a motion to accept a late brief on April 13, 2007, and finally filed the brief on May 1, 2007. While the motion for acceptance of a late brief was subsequently granted, this Committee is troubled by Ms. Wang's inability to make any of these deadlines. This Committee is more troubled by Ms. Wang's inability to provide a cogent response to why the <u>Fang</u> brief was deficient and by her apparent misrepresentation to this Committee that the <u>Fang</u> and <u>Zheng</u> briefs were due contemporaneously, when clearly they were not. It is this Committee's opinion that Ms. Wang's explanation lacks merit and constitutes further misrepresentations to this Committee.

## V. Legal Standard

Under the Rules of the Committee on Admissions and Grievances for the United States Court of Appeals for the Second Circuit ("Committee Rules"),

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office . . . . An attorney also may be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Committee Rule 4; *see also* F.R.A.P. 46(c) ("a court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule").

"Conduct unbecoming a member of the bar" includes "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." In re Snyder, 472 U.S. 634, 645, 105 S.Ct 2874, 2881 (1985).

Also, under Federal Rule of Appellate Procedure 46 ("F.R.A.P.") and the Court's Local Rule 46 ("Local Rule"), an attorney must be admitted to the Court before practicing before it.

Finally, because Ms. Wang was a member of the bar of New York State during the time period at issue, the New York State Code of Professional Responsibility ("the Code") also applies. Three sections are of particular relevance in this matter. First, D.R. 6-101 provides that a lawyer shall not:

1.  Handle a legal matter which the lawyer knows or should know that he or she is not competent to handle, without associating with a lawyer who is competent to handle it;

2.  Handle a legal matter without preparation adequate in the circumstances;

3.  Neglect a legal matter entrusted to the lawyer.

22 N.Y.C.R.R. § 1200.30; *see also* N.Y.R. 1.3(b).

Second, D.R. 7-101 directs that attorneys shall not intentionally "[f]ail to seek the lawful objectives of the client through reasonably available means permitted by law and the Disciplinary Rules . . . " nor "prejudice or damage the client during the course of the professional relationship." 22 N.Y.C.R.R. § 1200.32(A)(1), (3); *see also* N.Y.R. 1.3(c). Further, the lawyer must not fail to "carry out a contract of employment entered into with a client for professional services, but the lawyer may withdraw . . . ." D.R. 7-101(A)(2); 22 N.Y.C.R.R. § 1200.32(A)(2); *see also* N.Y.R. 1.3(c). A lawyer may not withdraw from employment "until the lawyer has taken steps to the extent reasonably practicable to avoid foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, delivering to the client all papers and properties to which the client is entitled and complying with applicable laws and rules." D.R. 2-110(A)(2); 22 N.Y.C.R.R. § 1200.15(A)(2); *see also* N.Y.R. 1.16(e); Bennett, 525 F.3d at 223-24.

Third, the Code prohibits conduct that involves misrepresentation, is prejudicial to the administration of justice, and/or "adversely reflects on the lawyer's fitness as a lawyer." D.R. 1-102(A)(4), (5), (7); 22 N.Y.C.R.R. § 1200.3(A) (4), (5), (7); *see also* N.Y.R. 8.4(b)-(d), (h).

According to this Committee's rules, "[a]ny finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Committee Rule 7(h).

If an attorney has been found to have engaged in misconduct, this Committee may recommend to the Court's Grievance Panel that the attorney be:

(a) removed from the bar of the Court;

(b) if not a member of the bar of the Court, precluded from becoming a member or from appearing in future cases in the Court;

8

(c) suspended from practice before the Court, for either an indefinite or a specified period of time;

(d) publicly or privately reprimanded;

(e) monetarily sanctioned;

(f) removed from the Court's pro bono or Criminal Justice Act panels;

(g) referred to another disciplinary committee, bar association, law enforcement agency, or other agency or organization;

(h) subject to the supervision of a special master, or receive some form of counseling or treatment by an appropriately certified person; or

(i) subject to such other disciplinary or corrective measures as the circumstances may warrant, including any combination of the preceding possible actions.

Committee Rule 6(a)-(i). The following factors are considered in recommending discipline:

(a) the duty violated;

(b) the lawyer's mental state;

(c) the potential or actual injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

American Bar Association, Standards for Imposing Lawyer Sanctions ("ABA Standards") (C)(3.0).

## VI.    Aggravating and Mitigating Factors

There are significant aggravating factors in this matter. First, the misconduct described above was repeated by Ms. Wang on multiple occasions and over an extensive period of time.

Second, Ms. Wang has a history of misconduct before other tribunals. In fact, Ms. Wang has been sanctioned twice by the United States Court of Appeals for the First Circuit. For example, in Rantung v. Gonzales, First Circuit Docket No. 06-1377, the First Circuit found that Ms. Wang's arguments were "neither developed nor supported by references to the relevant law," noting that this "is not the first time we have had occasion to note this attorney's failure to conform to the procedural and substantive standards . . . ." Ms. Wang was ordered to show cause why single or double costs should not be assessed under Federal Rule of Appellate Procedure 38.

9

The First Circuit subsequently imposed a sanction and ordered double costs. Ms. Wang states that the same "of counsel" attorney prepared that brief, though Ms. Wang signed it. Ms. Wang acknowledges that she did not properly review the brief and takes responsibility under Federal Rule 11.

In Panjaintan, the First Circuit noted concern about errors in the papers that showed that Ms. Wang may have conflated two cases and that the petition was frivolous. The Court notified Ms. Wang of its intention to impose double costs under Federal Rule of Appellate Procedure 38, which it did on July 5, 2007, to be paid by Ms. Wang. According to the docket in that matter, the petitioners forwarded payment and the Court had to return the money orders to them and advise that the costs were to be paid by Ms. Wang, not by them. Ms. Wang claims that the same "of counsel" attorney prepared that brief. She acknowledges that she did not properly review it and accepts responsibility.

In addition to the sanctions imposed by the First Circuit, on June 21, 2006, Ms. Wang received a disciplinary letter of admonition from the Executive Office for Immigration Review for failing to appear at scheduled hearings.

There also are mitigating factors in this matter. As noted above, Ms. Wang was born in Beijing, China. Her father committed suicide when she was just four years old, her mother suffered from depression, and Ms. Wang was a target of schoolmates. Despite these significant personal obstacles, Ms. Wang obtained a legal education in China and then came to the United States to obtain an L.L.M. from Temple Law School. For the past seven years working with the Law Offices of Matthew J. Jeon, P.C., she claims to have worked over sixty hours per week without absence.

As a practitioner, Ms. Wang has worked with a challenging portfolio of clients. Approximately two-thirds of Ms. Wang's appellant clients were previously represented by other offices. They often do not have their files and therefore Ms. Wang must file a petition for review to protect the client's interests before she has had an opportunity to review the clients' entire file.

Further, Ms. Wang has accepted responsibility for the misconduct at issue and has instituted various corrective measures. For example, she has made changes to the way the office functions and is further educating herself through reading and course work. She utilizes a new calendar tickler system; has updated the office's retainer agreement; and has requested and documented more thorough information, including more extensive contact information, from clients. In addition, the "of counsel" attorney who Ms. Wang claims was responsible for some of the misconduct described herein was replaced, and paralegals are now provided with more training. Further, Ms. Wang now takes fewer Second Circuit cases and spends more time reviewing cases. She claims now to spend four hours reviewing a brief and the corresponding record, instead of her former practice of spending only twenty minutes per brief.

Nevertheless, despite these changes, Ms. Wang has continued to miss deadlines with the Court. For instance, in the matter of Fang v. Mukasey, 080986, Ms. Wang missed two Court-imposed deadlines in 2008. What is more, as part of her explanation for those missed deadlines,

10

Ms. Wang stated that she had lost the client file. Further, until she was confronted with questions at the hearing about these missed deadlines, Ms. Wang represented that no deadlines had been missed since the allegations in the Referral Order. Consequently, this Committee lacks confidence both in Ms. Wang's current ability to meet deadlines -- even in light of the corrective measures that she claims to have taken -- and in her efforts to be fully candid with this Committee.

## VII. Recommendation

The Committee finds, based on clear and convincing evidence, that Ms. Wang has violated F.R.A.P. 46(c); DR 6-101; 22 N.Y.C.R.R. § 1200.30; DR 7-101(A)(1), (2), (3); 22 N.Y.C.R.R. § 1200.32(A)(1), (2), (3); DR 1-102(A) (4), (5), (7); 22 N.Y.C.R.R. § 1200.3(A) (4), (5), (7). Additionally, Ms. Wang violated F.R.A.P. 46 and Local Rule 46 by practicing before the Court without being admitted.

It is this Committee's conclusion that Ms. Wang was not properly equipped to handle the influx of Second Circuit matters that her office received. That is, Ms. Wang lacked sufficient practical skills and knowledge to adequately follow the Court's rules and properly protect her clients' interests. It is also this Committee's conclusion, however, that because of Ms. Wang's educational background and her showing of genuine dedication to her clients' needs, Ms. Wang is not incapable of competently representing petitioners before the Court – rather, she simply has thus far been ill-equipped to do so. This Committee finds that Ms. Wang could benefit from continued, and targeted, legal education regarding handling cases at the appellate level and overall law practice management. Consequently, this Committee recommends that the Court require Ms. Wang to participate in significant continuing legal education as part of any sanction it may order.

Additionally, this Committee concludes that though Ms. Wang has taken certain corrective measures and has expressed remorse that this Committee also finds to be genuine, discipline is warranted in light of her misconduct and her insufficient and sometimes inconsistent representations to this Committee.

Consequently, this Committee recommends that Ms. Wang be suspended for a period of six months. Ms. Wang should be required to promptly provide notice of her suspension to her current clients for whom she has an action pending in the Court or for whom action in the Court may be warranted during the suspension period and to all attorneys in matters pending in the Court for which she is counsel of record. Specifically, within twenty-one days of the commencement of her suspension, she should be required to: (1) notify each client for whom she has an action pending in the Court or for whom action in the Court may be warranted during the suspension period, by registered or certified mail, that she is unable to act as counsel due to suspension and advise the client to obtain new counsel and (2) in each matter pending in the Court, notify all counsel for all parties, by registered or certified mail, that she is unable to act as counsel due to suspension and advise of the name and address of her client in each respective matter. If any of Ms. Wang's clients in matters pending in the Court fails to obtain new counsel, Ms. Wang shall move for permission to withdraw as counsel. No later than thirty days after the

11

commencement of her suspension, Ms. Wang should be required to file with the Court an affidavit showing her current mailing address and attesting that she has complied with the order, including all notice requirements; Ms. Wang should be required to serve, by registered or certified mail, a copy of the affidavit on the Secretary for this Committee. Ms. Wang should be required to maintain records of compliance with these notice and reporting requirements and produce them to the Court or this Committee upon request.

This Committee further recommends that during her suspension, she be required to complete no fewer than eight hours of continuing legal education ("CLE") in appellate level advocacy and no fewer than eight hours of CLE in law office/practice management from CLE providers accredited by the bar of New York, in addition to the CLE hours required for all attorneys admitted in New York State. Ms. Wang should exercise due diligence in seeking out courses that will provide information and direction for her substantive representation and practical management in federal appellate matters. She should report and provide documentation of her compliance to this Committee's Secretary no later than thirty days before the conclusion of her suspension.

In addition, she should be required, in connection with her practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to this Committee sworn statements identifying under oath each and every instance during each of the four reporting periods described below in which (1) a submission is not filed or is filed out of time; or (2) an application is made for permission to make a late filing only after the due date has passed. It is expected that these reports will show no such instances absent exigent circumstances, which circumstances should be attested to under oath in the respective report.

In the event that a report is not timely filed or reveals deficiencies not justified by exigent circumstances, the Committee may recommend the imposition of additional discipline, including, but not limited to, further suspension from the Second Circuit, without hearing further testimony.

The following reporting periods and deadlines shall be observed. The report for each reporting period shall be mailed to the Committee Secretary within ten (10) days of the end of that reporting period. The first reporting period shall commence 10 days after the Committee's recommendation is mailed to Ms. Wang and shall end six months after the Second Circuit issues its order of disposition in this matter. Each of the three subsequent reporting periods shall be for a period commencing at the end of the prior reporting period and ending six months later. A total of four reports will be prepared and mailed to the Committee Secretary.

12